<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMERICAN FINANCIAL RESOURCES, INC., | |
| *Plaintiff*, | Civil Action No. 17-12019 (JMV) (MF) |
| v. | <u>**OPINION**</u> |
| VALLI D. SMOUSE d/b/a SMOUSE APPRAISAL SERVICE and LEXINGTON INSURANCE COMPANY, | |
| *Defendants*. | |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This case concerns Defendant's allegedly improper appraisal of a property located in Moab, Utah. D.E. 1. Currently pending before this Court is a motion to dismiss or transfer, D.E. 10, filed by Defendant Valli D. Smouse d/b/a Smouse Appraisal Service.[1] Defendant seeks dismissal for lack of personal jurisdiction, or in the alternative, transfer pursuant to 28 U.S.C. § 1631. The Court has reviewed the motion, the filings in support and in opposition, and the record.[2] The Court considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to transfer is granted, Defendant's motion to dismiss is denied, and the case is transferred to the District of Utah.

---

[1] Plaintiff voluntarily dismissed Lexington Insurance Company on February 7, 2018. D.E. 8.

[2] Plaintiffs Complaint will be referred to as "Compl.," D.E. 1; Defendant's brief in support of her motion to dismiss will be referred to as "Def. Br.," D.E. 10-1; Plaintiff's brief in opposition to this motion will be referred to as "Pl. Opp'n," D.E. 11; and Defendant's reply to this opposition will be referred to as "Def. Reply," D.E. 12.

## I. FACTUAL BACKGROUND

Plaintiff American Financial Resources, Inc. is a New Jersey originator, broker, and servicer of mortgage loans that bought (and later sold) a residential mortgage on a property in Moab, Utah. Compl. ¶¶ 1, 13, 15. Defendant, an individual residing in Moab, Utah and doing business as Smouse Appraisal Service, appraised the property at the request of Primary Residential Mortgage, Inc. ("Primary"), a residential mortgage originator located in Utah. *Id.* ¶ 7; D.E. 1-1 ("Appraisal"); D.E. 12 at 3.

The Appraisal contained two general types of information: specific information regarding the appraised property and "comparator" information which detailed the prices of similar properties in the Moab area. Appraisal at 1-7. Based on Defendant's visit to the home and analysis of the comparators, Defendant appraised the property at $287,000. Compl. ¶ 8.

Paragraph 21 of the Appraisal included the following language:

> The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department agency, or instrumentality of the United States and any state, the District of Columbia or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.

Appraisal at 7. The Appraisal defined "lender/client" as Primary. *Id.* at 1. The property ultimately sold for the appraised price, and the purchasers took out a mortgage with Primary to cover approximately 95% of the purchase price. Compl. ¶ 13.

The property's $272,650 Fannie Mae-eligible mortgage was eventually bought by Plaintiff. *Id.* ¶¶ 1, 13, 15. Plaintiff then sold the mortgage to Seneca Mortgage Servicing, LLC ("Seneca"), a company incorporated in Delaware with its principle place of business in Massachusetts. *Id.*

¶ 16.  On May 20, 2016, Seneca received a letter from Fannie Mae identifying a "significant defect" in the Appraisal's compliance with Fannie Mae's appraisal guidelines.  D.E. 1-2 at 1.  Based on this letter, Fannie Mae "determined that repurchase of the subject loan [by Plaintiff] [was] the appropriate remedy."  *Id.* at 1.

On July 14, 2016, Defendant updated her appraisal.  Compl. ¶ 19.  The Complaint does not allege how Defendant found out about the May 20, 2016 letter or to whom Defendant provided the updated appraisal.[3]  However, according to the Complaint, by July 19, 2016 Fannie Mae received a copy of the updated appraisal.  Compl. ¶ 19; *see also* D.E. 1-3.  Several months later, in November 2016, Fannie Mae issued a second notice that a "significant defect" remained, requiring Plaintiff to repurchase the loan.  Compl. ¶ 20; *see also* D.E. 1-3.

On March 8, 2017, Plaintiff contacted Defendant regarding the continued deficiencies in the Appraisal.  Compl. ¶¶ 21-24.  After a series of communications with Defendant's representatives failed to resolve Plaintiff's demand of $121,251.27, Plaintiff initiated this action.  *Id.* ¶¶ 25-47.

## II.  PROCEDURAL HISTORY

Plaintiff filed its Complaint on November 22, 2017, alleging breach of contract and unjust enrichment.  *Id.*  Defendant moves to dismiss the Complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3).  D.E. 10.  As to personal jurisdiction, Defendant first argues that she has no continuous or systematic contacts

---

[3] In an affidavit filed in opposition to Defendant's motion, Plaintiff's Chief Compliance Officer avers that Defendant "defended the comments and defects noted by Fannie Mae by providing her updated appraisal and response directly to [Plaintiff] at our offices in New Jersey on or about July 14, 2016."  D.E 11-2 at 2.

with the state of New Jersey sufficient to establish general jurisdiction. Def. Br. at 6-7, 9-10. Second, Defendant argues that the Court lacks specific jurisdiction because she never purposefully availed herself to the state of New Jersey and that any contacts with New Jersey related to this action are merely random, fortuitous, or attenuated. *Id.* at 7-9. In the alternative, Defendant argues that venue is improper and the Court should transfer this action under 28 U.S.C. § 1631. *Id.* at 11-12.

In response to Defendant's motion, Plaintiff concedes that this Court lacks general personal jurisdiction but argues that the Court may exercise specific jurisdiction over Defendant. Pl. Opp'n at 4. Specifically, Plaintiff argues that under Paragraph 21 of the Appraisal, Defendant knew that her Appraisal could be disclosed to mortgagees, assigns, and insurers, including Plaintiff. *Id.* at 5. Thus, Plaintiff argues, it was foreseeable that Defendant could be sued in New Jersey since Plaintiff is a resident of New Jersey. *Id.*

Plaintiff further argues that even if it was not foreseeable that Defendant could be sued in the state of New Jersey at the time of the Appraisal, once Defendant sent her updated appraisal to Plaintiff in New Jersey, it was foreseeable that she could be sued in this District. Pl. Opp'n at 4-5; *see also* D.E. 11-2 ¶ 2. In the alternative, Plaintiff argues that the Court should permit jurisdictional discovery or should transfer this case to the Middle District of Florida or the District of Utah. Pl. Opp'n at 6-8.

## III.  LEGAL STANDARD

### A.  Dismissal for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, a court conducts a two-part inquiry to examine the relationship among the defendant, the forum, and the litigation. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). First, the court looks to the

forum state's long-arm statute to determine whether it permits jurisdiction over the defendant. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). Second, the court must determine whether jurisdiction is permitted under the due process clause of the Fourteenth Amendment. *Id.*

"New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). A district court sitting in New Jersey is "constrained . . . only by the traditional notions of fair play and substantial justice inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted).

The Due Process Clause allows a court to exercise jurisdiction over an out-of-state defendant only if that defendant has established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). A defendant has minimum contacts when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Within this framework, the Supreme Court has recognized two types of jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). For a court to exercise general jurisdiction over a defendant, the defendant must have contacts with the forum state that are so continuous and systematic that the defendant is essentially "at home" in

the foreign state. *Id.* at 138-39. In contrast, for a court to exercise specific jurisdiction over a defendant, the plaintiff's cause of action must arise out of the defendant's forum related contacts such that the defendant should reasonably anticipate being haled into court there. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Summarizing these principles, the Third Circuit has articulated a three-part test to determine specific jurisdiction: (1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears "the burden of demonstrating facts that establish [] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe* 566 F.3d at 330). The district court "accept[s] all of the plaintiff's allegations as true and construes disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret*, 954 F.2d at 142 n.1).

### B. Transfer Pursuant to 28 U.S.C. § 1631

Section 1631 provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action. . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed [.]

28 U.S.C. § 1631. "Section 1631 is an efficiency-oriented provision that governs transfers of cases between federal courts." *Moravian Sch. Advisory Bd. of St. Thomas, V.I. v. Rawlins*, 70 F.3d 270, 277 (3d Cir. 1995) (Becker, J., concurring and dissenting). Thus, where there is "a want of jurisdiction," the district court must transfer the case to the transferee court so long as the action

could have been brought there and such transfer "comports with the interests of justice." *Chavez v. Dole Food Co.*, Inc., 836 F.3d 205, 224 (3d Cir. 2016).

## IV. DISCUSSION

### A. Personal Jurisdiction

Defendant first moves to dismiss for lack of personal jurisdiction. Because Plaintiff concedes that the Court lacks general jurisdiction, Pl. Opp'n at 4, the Court only addresses whether it may exercise specific jurisdiction over Defendant. As noted above, to exercise specific jurisdiction, first the Court must examine whether Defendant has purposefully directed her activities to the state of New Jersey sufficient to establish minimum contacts here. *Marten*, 499 F.3d at 296. Second, the Court analyzes whether Plaintiff's claim arises out of or relates to at least one of Defendant's New Jersey activities. *Id.* Finally, the Court examines whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

The Court's inquiry starts – and concludes – with Defendant's minimum contacts with New Jersey. Plaintiff's location in New Jersey is the only connection between Defendant and this District. Defendant, a resident of Utah, allegedly improperly appraised a property in Moab, Utah and provided the Appraisal to Primary, a residential mortgage originator located in Utah. Compl. ¶¶ 2-3, 7. Accepting the facts alleged in the Complaint as true and drawing all reasonable factual inferences in the record in favor of the Plaintiff, Defendant's only contact with New Jersey occurred nearly two years after the allegedly improper Appraisal: when she responded to Plaintiff's inquiry regarding the defects identified by Fannie Mae. D.E. 11-2 ¶ 2. Under *Walden* and its progeny, this contact alone is insufficient to exercise personal jurisdiction over Defendant. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014).

Plaintiff argues in its opposition to Defendant's motion that Defendant purposefully availed herself to the state of New Jersey under Paragraph 21 of the Appraisal. Pl. Opp'n at 5. Plaintiff states that because this clause allows for the potential disclosure of the Appraisal to any of several categories of entities, Defendant could foreseeably be sued in any jurisdiction where one of these types of entities resides – including the District of New Jersey. *Id.* Plaintiff provides no legal authority for this far-reaching proposition nor could the Court find any. Rather than being foreseeable, such unknown and undefined links to the forum are the touchstone of random and fortuitous contacts that preclude the exercise of personal jurisdiction. *See Walden v. Fiore*, 571 U.S. at 284. Because Defendant lacks minimum contacts with New Jersey, the Court cannot exercise personal jurisdiction over her.

## B. Jurisdictional discovery

Plaintiff argues that, if the Court finds that jurisdiction lacking, it should grant jurisdictional discovery. In the Third Circuit, the district court shall allow for jurisdictional discovery unless Plaintiff's basis for jurisdiction is "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Thus, "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Plaintiff has not made this showing. Plaintiff does not present the Court with additional facts or theories that would tend to support the possible existence of New Jersey contacts sufficient for specific jurisdiction over Defendant, nor does Plaintiff indicate how the discovery she seeks would support such a finding. *See Victory Int;l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. CIV.A.

07-0375WHW, 2008 WL 65177, at *8 (D.N.J. Jan. 2, 2008); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018). Accordingly, the request for jurisdictional discovery is denied.

### C. Transfer Under 28 U.S.C. § 1631

In the alternative, Plaintiff argues that the Court should transfer this case under 28 U.S.C. § 1631 to either the District of Utah or the Middle District of Florida. Pl. Opp'n at 8. Defendant concedes that the District of Utah would be an appropriate transferee court. Def. Br. at 11-12.

Having determined that the Court lacks jurisdiction, transfer pursuant to § 1631 is warranted if (1) the action "could have been brought" in the transferee district and (2) transfer is in the interest of justice. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009). After careful examination, the Court determines that transfer to the District of Utah is appropriate.

To satisfy the first prong, the Court must find that the transferee court has (1) subject matter jurisdiction, (2) venue, and (3) personal jurisdiction. 17 Moore's Federal Practice § 111.53 (footnotes omitted). As to subject matter jurisdiction, Plaintiff brings its claims in federal court under diversity, alleging two common law claims and damages which exceed $75,000. Plaintiff is a resident of New Jersey and Defendant is a resident of Utah. Thus, on the facts as alleged in the Complaint, the District of Utah would have diversity jurisdiction over this action. Venue is proper in Utah because that is where property in question, Defendant, and Primary are located – as well as where the complained of conduct occurred. The District Court in Utah would have personal jurisdiction over Defendant because he is a resident of Utah. Thus, this matter could have been brought in the District of Utah and the first prong satisfied.

"The 'interest of justice' requirement ordinarily will be satisfied if the statute of limitations has expired subsequent to the time of the original filing, so that transfer, rather than dismissal, will preserve the plaintiff's cause of action." 17 Moore's Federal Practice § 111.52 (footnote omitted).

However, "[e]ven if the statute of limitations would not bar the plaintiff from refiling the action in the correct court, transfer rather than dismissal may be in the interest of justice because it would save the plaintiff the time, expense and effort of having to refile the action." *Id.* (footnote omitted); *see also Covelman v. Hotel St. Regis*, No. 14-5757, 2016 WL 762661, at *1 (D.N.J. Feb. 25, 2016).

Here, the interests of justice support transfer. On its face, the action is not patently frivolous, it appears to be timely filed, and there was no delay in requesting transfer. *D'Jamoos*, 566 F.3d 109-11; *McIlwain, LLC v. Berman*, No. CV 17-1257, 2018 WL 2357745, at *8 (D.N.J. May 24, 2018). Moreover, dismissal of this case, now pending for over a year, in lieu of transfer, would thwart efficient adjudication and likely waste the time and resources of both the parties and the courts. Accordingly, transfer to the District of Utah is appropriate.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to transfer is granted, Defendant's motion to dismiss is denied, and this case is transferred to the District of Utah. An appropriate Order accompanies this Opinion.

Date: December 28, 2018

/s John Michael Vazquez
**John Michael Vazquez, U.S.D.J.**